UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MATTHEW MCCABE,

Plaintiff,

v.                                                          Case No.  5:06-cv-70-Oc-10GRJ

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

Defendant.

_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying his application for Supplemental Security

Income. (Doc. 1.)  The Commissioner has answered (Doc. 3) and both parties have filed

briefs outlining their respective positions.  (Docs. 8 & 9.)  For the reasons discussed

below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On February 28, 2003, Plaintiff filed an application for Supplemental Security

Income benefits claiming a disability onset date of February 2, 2001. (R. 55.)  Plaintiff's

application was denied initially (R. 37-38), and upon reconsideration. (R. 32-33.)

Thereafter, Plaintiff timely pursued his administrative remedies available before the

Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted,
therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

(R. 30.) The ALJ conducted Plaintiff's administrative hearing on April 15, 2005 (R. 195-219) and issued a decision unfavorable to Plaintiff on June 14, 2005. (R. 11-21.)  The Appeals Council denied Plaintiff's request for review on December 27, 2005. (R. 4-6.) On February 24, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] <u>See</u> 42 U.S.C. § 405(g).

[3] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); <em>accord,</em> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] <u>Foote</u>, 67 F.3d at 1560; <em>accord,</em> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE EVIDENCE

Plaintiff was born on January 24, 1966 and was thirty-nine (39) years old at the time the ALJ issued his decision. (R. 198.) Plaintiff completed high school (R. 198) and has past relevant work history as a car porter, warehouse laborer, truck driver and security guard. (R. 56, 64, 199-202.) Plaintiff's IQ testing reveals that he has low average intelligence. (R. 112.) Following high school, Plaintiff received vocational training and was described by a vocational evaluator as highly motivated and employable. (R. 83, 85.) Plaintiff contends that he became disabled on February 2, 2001 due to severe low back, neck, shoulder, knee and hip pain, as well as "very bad" headaches. (R. 55.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from degenerative disc disease of the lumbrosacral spine, obesity, lower extremity edema and a pain disorder. (R. 20.) The

---

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

ALJ determined that Plaintiff could not perform his past relevant work but retained the residual functional capacity (RFC) to perform a full range of sedentary work and that under the Medical Vocational Guidelines the Plaintiff was not disabled. (R. 20.)

Plaintiff injured his back in 1995 while working at a cheese factory and as a consequence underwent a laminectomy on his back. (R. 15, 89, 183, 203.) Plaintiff continued to work after the 1995 back surgery. On December 19, 2000, Plaintiff was involved in a motor vehicle accident, which caused Plaintiff to miss about one week of work. (R. 162, 182.)  Following the accident Plaintiff complained of extreme back pain to Oregon Hunter, M.D. Surgery was not recommended and Plaintiff completed a course of physical therapy, which Dr. Hunter reported provided benefit in function and mobility. (R. 162-163.) Dr. Hunter rated Plaintiff's permanent injuries as six percent impairment of the whole person. (R. 163.)

Plaintiff was treated by Dr. Hunter from January 23, 2001 through the time of the hearing in January 2005. (R. 16, 153-194.) At the time of Plaintiff's first visit with Doctor Hunter on January 23, 2001, Plaintiff was 6'1" and 337 pounds and complained of lower and upper back pain, neck and shoulder pain and severe headaches. (R. 182.) Plaintiff complained that the back pain radiated to both lower extremities. (R. 182.) Plaintiff reported a "[d]ecreased tolerance for prolonged sitting, walking or standing." He also reported that "he has difficulty driving [and] has severe pain with bending or lifting." (R. 182.) Dr. Hunter diagnosed Plaintiff with cervical and lumbrosacral strain related to the automobile accident and recommended a "brief course of anti-inflammatory medication." (R. 185.) Dr. Hunter prescribed Hydrocodone, Celebrex and Zanaflex. (R. 185) and ordered an x-ray and MRI. The x-ray revealed narrowing primarily in the L4-5 areas and

facet degeneration in the lower lumbar area. (R. 181, 176.) The MRI showed a mild loss of disc height L1-L2, disc dessication L5-S1 and a previous laminectomy at L5-S1 on the left. (R. 180.)

Progress notes for a March 14, 2001 visit with Dr. Hunter, disclose that Plaintiff complained of continuing neck pain that radiated into the parascapula region and low back pain that radiates into both legs associated with periodic numbness in the buttocks and tingling. Plaintiff reported no benefit from the anti-inflammatory medications, but that he did receive some benefit from the use of the Hydrocodone. (R. 178.) Plaintiff reported increased symptoms without medications. Dr. Hunter refilled Plaintiff's Hydrocodone prescription and warned Plaintiff about the potential habituating nature of the drug. (R. 178-179.)

At Plaintiff's July 20, 2001 visit with Dr. Hunter, Plaintiff complained that the numbness that radiated from the buttocks down both legs made it difficult to stand briefly. Plaintiff reported having difficulty with prolonged standing and walking due to pain and numbness. Plaintiff reported improved sleep with a body pillow.  Dr. Hunter ordered a surgical evaluation and prescribed Robaxin for Plaintiff's muscle spasms. (R. 174-175.) The report of the surgeon, Antonio DiScalfani, M.D., on August 15, 2001, disclosed degenerative disc disease at L5-S1. However, Dr. DiScalfani did not recommend surgery. (R. 89.)

Over the next several months, Plaintiff visited Dr. Hunter with continued complaints of lower back pain and stabbing pains in his back and neck. (R. 169, 171-172.) On November 8, 2001, Dr. Hunter noted that Plaintiff had voluntary weight loss on a diet. Dr. Hunter refilled Plaintiff's Lortab prescription and noted that Plaintiff continued

7

to take Vicodin.  (R. 169.) An MRI, dated January 10, 2002, disclosed mild degenerative disc disease at C4-C5, causing mild right-sided neural foraminal narrowing and loss of cervical lordosis. (R. 167-168.)

On February 5, 2002, Plaintiff reported an intolerance for bending or unsupported sitting. Plaintiff reported that Hydrocodone helps with his pain but that Neurontin did not help for the lower extremity symptoms. An MRI of the cervical spine showed a mild loss of cervical lordosis. The notes from that visit disclose that Plaintiff had a C4-5 circumferential bulge, slightly more prominent on the right, with slight neural foraminal narrowing but no central or left neural foraminal narrowing. Dr. Hunter recommended a brief course of physical therapy to decrease pain and improve function. (R. 167.)

At Plaintiff's March 6, 2002 visit with Dr. Hunter, Plaintiff reported that he was doing a home physical therapy program but that he strained his left hamstring and now has some difficulty walking and standing secondary to the pain in the left leg. However, Dr. Hunter found a good range of motion of the right upper and lower extremities and pertaining to Plaintiff's displayed decreased range of motion in the left lower extremity, Dr. Hunter opined that there was "questionable true effort on the part of the patient." Dr. Hunter recommended that Plaintiff continue with physical therapy. (R. 166.)

Plaintiff returned to Dr. Hunter on May 1, 2002. Dr. Hunter noted that Plaintiff's neck and back pain had improved over time, but that the back pain still radiated pain to both lower extremities. Dr. Hunter stated that Plaintiff has a decreased ability to sit, bend, turn his neck to the right or lift more than 10 pounds and a decreased ability to stand and walk for long periods of time. Dr. Hunter noted that Plaintiff's neurological motor skills, reflexes and gait were normal. Dr. Hunter opined that Plaintiff's future

medical care would be palliative, with pain management with medication. Plaintiff was not determined to be a surgical candidate. Dr. Hunter found that Plaintiff was restricted to sedentary to light level of lifting and carrying and no prolonged sitting, bending, standing or walking. (R. 162-163.)

At Plaintiff's July 25, 2003 visit with Dr. Hunter, Dr. Hunter noted that Plaintiff continued to use Lortab and denied "any side effects to the medication." Plaintiff reported taking no other medications. Plaintiff was considered morbidly obese but reported that "he has lost 50 pounds in the last month on the Atkin's Diet." Dr. Hunter noted that Plaintiff was not in acute distress, that he was pleasant and cooperative and that no pain behavior was evidenced. Plaintiff had mild edema in the lower extremities and mild tenderness to palpation of the cervical paravertebrals, as well as mild tenderness to palpation in the low back. No rigidity was noted for either area. Plaintiff had a "well-healed surgical scar" and was noted to have "mildly restricted range of motion to the cervical spine and lumbrosacral spine." Dr. Hunter encouraged Plaintiff to lose weight and encouraged Plaintiff to take part in daily exercise. There was no change in Plaintiff's activity status.

At Plaintiff's September 2, 2003 visit with Dr. Hunter, Dr. Hunter noted that Plaintiff continued to complain of neck and back pain and had difficulty bending or lifting. Plaintiff reported having a learning disability and that he takes Lortab for pain. Plaintiff was still overweight and had rigidity of the neck and back. Plaintiff's mood and affect, speech and cognition were all noted as normal. Plaintiff was hypoactive in the lower extremities and there was no spasticity in the lower extremities. While Plaintiff's gait was stiff, he did not require an assistive devise.  Dr. Hunter recommended conservative

treatment and continued Plaintiff's current activity status. (R. 155-156.)      At Plaintiff's

March 4, 2005 visit with Dr. Hunter, Plaintiff reported continuing neck and back pain. Dr.

Hunter diagnosed Plaintiff with "chronic intractable pain syndrome; cervical and

lumbrosacral strain; aggravated left S1 radiculopathy; lumbar laminectomy, 1995." Dr.

Hunter noted that the medications Plaintiff took helped with pain.  At the time of this

visit, there was no upper or lower extremity edema, but there was rigidity in the neck

and back as well as restricted range of motion of the cervical spine and back. Plaintiff

was prescribed Lortab and there was no change in his activity status. (R. 187-188.) The

ALJ stated that "[g]reat weight is accorded to Dr. Hunter's opinion due to his treating

relationship with the claimant." (R. 16.)

        In addition to receiving treatment from Dr. Hunter, the Plaintiff was referred to Dr.

Gary Honickman in July 2003 for a consultative psychological evaluation. The results

revealed a full scale intelligence quotient of 80, good insight and judgment, somewhat

depressive thought content, good immediate memory recall and mildly to moderately

depressed mood and affect. Dr. Honickman concluded that Plaintiff had a Pain Disorder

Associated with a General Physical Condition and psychological factors.  Dr.

Honickman found that Plaintiff functions at the bottom of the low average range

intellectually and noted that Plaintiff "could barely walk around the examiner's office."

(R. 111-112.) The ALJ stated that "[g]reat weight is accorded to Dr. Honickman's

opinion due to its consistency with the evidence of record." (R. 16.)

        A State Agency non-examining psychologist, Val J. Bee, Psy.D., found that

Plaintiff had an organic mental disorder and a pain disorder that results in mild

limitations of Plaintiff's activities of daily living; mild limitations on Plaintiff's ability to

maintain social functioning; moderate limitations on Plaintiff's ability to maintain concentration, persistence or pace, and no episodes of decompensation. (R. 111-112.) The ALJ stated that "[g]reat weight is accorded to Dr. Bee's opinion due to its consistency with the objective medical evidence of record." (R. 17.)

A State Agency non-examing physician, Reuben E. Brigety, M.D., found that Plaintiff retained the ability to lift and carry no more than a maximum of 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for about 6 hours per 8-hour workday, and to push and pull with occasional limitations in the lower extremities. The ALJ assigned "some weight" to Dr. Brigety's opinion "due to its overall consistency with the body of clinical and laboratory findings of record." However, the ALJ noted that "Dr. Brigety failed to consider the combined effects of the claimant's impairments." (R. 17.)

**The ALJ's Decision**

The ALJ found that "claimant's mental impairments result in mild limitations of the claimant's activities of daily living; mild limitations of the claimant's ability to maintain social functioning; moderate limitations of the claimant's ability to maintain concentration, persistence or pace; and with no episodes of decompensation." Furthermore, the ALJ found that the "medical evidence indicates that the claimant has degenerative disc disease of the lumbrosacral spine, obesity, lower extremity edema and a pain disorder...". (R. 17.)

The ALJ then made the determination as to whether Plaintiff retained the RFC to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. In making this assessment, the ALJ considered Plaintiff's "symptoms, including pain and the extent to which these symptoms can

11

reasonably be accepted as consistent with the objective medical evidence" as well as "any medical opinions."(R. 17.)

The ALJ found that Plaintiff's allegations were "less than fully credible and not supported by the objective clinical and laboratory findings of record. (R. 17.) The ALJ stated that the "treatment history that the claimant received from Dr. Hunter was conservative in nature and supports the finding regarding the claimant's residual functional capacity." (R. 17.) In addition, the ALJ stated that Plaintiff's "activities of daily living and conservative treatment history and regimen do not support the severity of his allegations regarding functional limitations." (R. 17.)

Accordingly, the ALJ found that Plaintiff retains the RFC to lift and carry 10 pounds occasionally, sit for 6 hours per 8-hour workday, stand and walk 2 hours per 8-hour workday, with occasional limitations of his ability to understand, remember and carry out detailed instructions. (R. 18.)

The ALJ then determined that "[d]ue to his inability to stand and walk for prolonged periods of time and lift and carry heavy weight, the claimant is unable to perform the requirements of his past relevant work." (R. 18.)

The ALJ found that Plaintiff is "a younger individual between the ages of 18 and 44" and has "a high school education with no acquired work skills that are readily transferable to skilled or semi-skilled work within his residual functional capacity." (R. 18.) The ALJ relied upon the Medical-Vocational Guidelines (the "grids") to find that Plaintiff was not disabled because Plaintiff could perform the demands of the full range of sedentary work. (R. 18.) The ALJ noted that pursuant to SSR 96-9 the following mental activities are generally required by competitive, remunerative, unskilled work:

12

understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

In addition, the ALJ cited to SSR 96-9 by stating that "[a] less than substantial loss of ability to perform any of the above basic work activities may or may not erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and a judgment made as to their effects on the unskilled occupational base considering other vocational factors of age, education and work experience. When an individual has been found to have a limited ability in one of more of these basic work activities, it may be useful to consult a vocational resource."

The ALJ found that Plaintiff has the "occasional inability to understand, remember and carry out detailed instructions but no loss of ability to meet basic work-related activity of understanding, remembering and carrying out simple instructions or performing simple repetitive tasks." (R. 19.) The ALJ did not consult a vocational expert because the ALJ found that Plaintiff had the exertional residual functional capacity to perform substantially all of the seven primary strength demands required by work at the sedentary level of exertion and that there were not any nonexertional limitations. (R. 18, 19.) The ALJ concluded that "the claimant has the exertional capacity to perform substantially all of the requirements of sedentary work and considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.08."

# IV.  DISCUSSION

Plaintiff raises three grounds in support of his argument that the Commissioner erred as a matter of law in denying his claim for disability benefits. The Court will address each argument in turn.

## A. The ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician.

Plaintiff contends that although the ALJ accorded "great weight" to the opinion of Dr. Hunter, Dr. Hunter's opinion does not support a finding that Plaintiff can perform the full range of sedentary work.  Plaintiff argues that Dr. Hunter's progress note that Plaintiff could do sedentary to light level of lifting and carrying, but no prolonged sitting, bending or walking is inconsistent with the ALJ's determination that Plaintiff can perform the full range of sedentary work. The Court disagrees and finds that the ALJ's RFC analysis is not inconsistent with the Dr. Hunter's medical records or the other medical evidence of record.

While Dr. Hunter did not define what he meant by "no prolonged sitting, bending of walking" it is apparent from the ALJ's discussion of the medical evidence - including the medical records from Dr. Hunter - that the RFC finding was consistent with Dr. Hunter's records and the other medical evidence of record.

Pursuant to SSR 96-9, sedentary work requires "the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria

are met."[23] In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.[24]

In the instant case, after a thorough discussion of Plaintiff's treatment records with Dr. Hunter, the ALJ expressly relied upon the fact that the "treatment history that the claimant received from Dr. Hunter was conservative in nature and supports the finding ... regarding the claimant's residual functional capacity."The ALJ buttressed his conclusion that Plaintiff could perform the full range of sedentary work by explaining that Plaintiff's "activities of daily living and conservative treatment history and regimen do not support the severity of [Plaintiff's] allegations regarding functional limitations."[25]

While Dr. Hunter noted that Plaintiff should refrain from prolonged periods of sitting, bending or walking  this opinion was provided in 2000.[26]  Subsequently - and as documented in Dr. Hunter's medical records - Plaintiff reported exercising, losing 50 pounds on the Atkins Diet and 70 pounds on the South Beach Diet, and told Dr. Hunter that he got relief from his pain with the help of pain medicine.[27]

---

[23] SSR 96-9p.

[24] Id.

[25] R. 17.

[26] R. 162-163.

[27] R. 187-188.

Ultimately, the ALJ is responsible for determining a claimant's RFC because these determinations are the exclusive province of the Commissioner.[28] The ALJ accorded great weight to the treatment by Dr. Hunter and properly relied upon Dr. Hunter's treatment records and the other evidence of record in concluding that Plaintiff had the RFC to perform a full range of sedentary work - a finding that is consistent with Dr. Hunter's restriction of Plaintiff to sedentary or light level lifting and carrying and consistent with Plaintiff's representation to Dr. Hunter that he was exercising regularly and Plaintiff's own testimony that he was capable of sitting for one hour before he needed to get up and stretch.

Accordingly, for these reasons, the Court concludes that the ALJ's finding that Plaintiff retained the RFC to perform sedentary work is supported by the medical evidence of record and is not inconsistent with the opinion of Dr. Hunter.

## B.    The Plaintiff Did Not Have Severe Non-Exertional Impairments that Precluded the Use of the Grids

### 1. Mental Limitations

Plaintiff argues that the ALJ erred by relying solely on the Grids without the testimony of a vocational expert because Plaintiff had severe mental limitations.

According to SSR 96-9p, a substantial loss of ability to meet any one of several basic work-related activities on a sustained basis, will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. A less than substantial loss of ability to perform any of the following work-related activities may or

---

[28] 20 C.F.R. §§ 416.927(e), 416.945, 416.946; *see also,* Spivey c. Apfel, 133 F.Supp. 2d 1292, 1299 (M.D. Fla. 2001).

may not significantly erode the unskilled sedentary occupational base: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e. simple work-related decisions; responding appropriately to supervision; and dealing with changes in a routine work setting. SSR 96-9 provides that "[w]hen an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource."[29]

Because the ALJ found that Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[30]  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[31]  Exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[32]  If either condition exists, the ALJ is required to consult a vocational expert.[33]

---

[29] SS 96-9p

[30] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[31] See id.

[32] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[33] See id.

The ALJ did not blindly rely upon the Grids rather than utilizing a vocational expert. Rather, the ALJ articulated why Plaintiff's mental impairments would not adversely impact the ability to do sedentary work. The ALJ properly noted that the consulting psychologist found that "Plaintiff had moderate limitations with his ability to concentrate" and that "she further explained these limitations were applicable to Plaintiff's ability to perform detailed, not simple, instructional tasks [and] Plaintiff's ability to carry out simple instructions was not significantly limited by his mental impairments."[34]  In addition, as the Commissioner points out, Plaintiff's low average intelligence has not prevented him from working in the past, nor has it prevented him from learning how to play military and strategic games on the computer. Notably, there is nothing in the medical record to suggest that Plaintiff's mental condition was becoming worse.

The ALJ's review of the medical evidence fully supports his decision that Plaintiff's mental impairments were not severe enough to limit his ability to perform basis work skills. For example, the "Psychiatric Review Technique" form, filled out by Dr. Bee (R. 114-139), evidences that Plaintiff's functional limitations, including his restrictions of activities of daily living and maintaining social function, were mild. Dr. Bee found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. However, Dr. Bee noted that Plaintiff "can drive, read newspapers, use computers, shop, etc." and that there "are no apparent severe emotional or psychiatric

---

[34] Doc. 9.

conditions."[35] Dr. Bee found that Plaintiff is not significantly limited in his ability to

remember locations and work-like procedures or in his ability to understand and

remember or carry-out very short and simple instructions. In addition, Dr. Bee found that

Plaintiff is not significantly limited in his ability to maintain attention and concentration for

extended periods, nor is he limited in his ability to perform activities within a schedule,

maintain regular attendance, and be punctual with customary tolerance. Dr. Bee

concluded that Plaintiff is not significantly limited in his ability to sustain an ordinary

routine without special supervision, in his ability to work in coordination with or proximity

to others without being distracted, or in his ability to make simple work-related

decisions.[36]

        While Dr. Bee did find that Plaintiff is moderately limited in his ability to follow and

carry-out detailed instructions, this skill is not required for an unskilled sedentary job. It

is only necessary to be able to understand, remember and carry out simple instructions

in order to meet the qualifications for unskilled sedentary work.[37]

        In addition to Dr. Bee's findings, the results of the consultative examination by Dr.

Honickman support the ALJ's determination that Plaintiff's mental impairments were not

severe enough to limit his ability to perform basic work skills. Dr. Honickman interviewed

Plaintiff on July 25, 2003. He found that Plaintiff "was oriented in all spheres and

Plaintiff's mood and affect were felt to be mildly to moderately depressed..."  Dr.

Honickman noted that Plaintiff was able to recall five digits forward and backward, that

---

[35] R. 126.

[36] R. 128.

[37] SSR 96-9. (1996).

Plaintiff's "thought processes were organized, though content somewhat depressive and his insight and judgment were felt to be good."[38]  Dr. Honickman found that Plaintiff was capable of managing in his own best interest any financial benefits to which he may be entitled.[39]

The ALJ gave great weight to the opinions of Dr. Honickman and Dr. Bee. Notably, neither psychologist found that Plaintiff had any significant mental impairment that would significantly erode the unskilled sedentary occupational base. Moreover, there is no evidence in the record that Plaintiff's mental limitations interfered with past work experience or that his mental limitations were worsening with time.

Accordingly, for these reasons, the Court concludes that the ALJ's finding that Plaintiff did not have any nonexertional impairments that would significantly erode the sedentary occupational base is supported by substantial evidence and therefore the ALJ was entitled to rely upon the Grids to determine whether Plaintiff was disabled, rather than utilizing the testimony of a vocational expert.

### 2. Obesity

Plaintiff also argues that the ALJ should have called a vocational expert to address the impact of Plaintiff's obesity on his ability to perform other work. The Commissioner responds that the "ALJ specifically gave great weight to the evaluation of Plaintiff's treating physician who also consistently noted Plaintiff's obesity as a factor in

---

[38] R. 111.

[39] R. 112.

his limitations."[40] According to the Commissioner, while the ALJ is required to consider the effects of obesity in his assessment of Plaintiff's limitations, the ALJ's consideration can be demonstrated by reference to reports from physicians who expressly took into account Plaintiff's obesity.[41] Furthermore, the Commissioner points out that "Plaintiff fails to point to any additional limitations caused by his obesity that are not incorporated into the significant limitations of a sedentary functional ability finding."[42]

Social Security Ruling 02-01p recognizes that obesity can cause functional limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity or hazards. There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Rather an individualized assessment of the impact of obesity on an individual's functioning is necessary to determine whether the impairment is severe.[43]  Obesity, in combination with another impairment, "may or may not increase the severity or functional limitations of the other impairment."[44]

The ALJ did not fail to address the functional limitations of Plaintiff's obesity but rather discussed Plaintiff's obesity throughout his opinion. For example, the ALJ expressly noted that Plaintiff "is a morbidly obese, 350+ man,"[45] that Dr. Hunter found

---

[40] Doc. 9.

[41] Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004.)

[42] Doc. 9.

[43] SSR 02-01 (2001).

[44] Id.

[45] R. 15.

him to be "moderately obese" in January 2001,[46] that Dr. Hunter recommended "increased exercise, weight loss"[47] and that Plaintiff suffers from "obesity."[48] The ALJ gave great weight to the opinion of Dr. Hunter, Plaintiff's treating physician, who consistently  documented Plaintiff's weight and weight loss throughout Plaintiff's treatment history. As such, the ALJ appropriately discussed Plaintiff's functional limitations as disclosed in the medical evidence from Plaintiff's treating physician, which themselves addressed Plaintiff's obesity.

Moreover, apart from discussing Plaintiff's medical treatment, which took into account Plaintiff's obesity, the ALJ did not err because Plaintiff has not pointed to any additional limitations from Plaintiff's obesity that are not incorporated into the significant limitations of sedentary work.

Accordingly, in making his RFC finding of sedentary work the ALJ properly recognized that obesity was a severe impairment. And in analyzing Plaintiff's functional limitations based upon the medical evidence, the ALJ appropriately analyzed the functional limitations - including any limitations resulting from obesity - in his finding that Plaintiff only is capable of performing sedentary work.

### 3. Medication Side Effects

Plaintiff also alleges that the side effects from medication are another non-exertional impairment that made use of the Grids improper.

---

[46] R. 16.

[47] Id.

[48] R. 20.

While the side effects of medication may need to be considered in assessing whether they would impact the claimant's ability to perform the full range of work at a particular functional level, in the instant case there was no evidence that Plaintiff's medications effected him in any significant way. To the contrary, Plaintiff consistently reported to his treating physician that he was experiencing no side effects from his medication.

On July 25, 2003, Plaintiff reported to Dr. Hunter that the use of Lortab was helpful for his pain and specifically denied any side effects from the medication.[49] Similarly, during the July 19, 2004 visit with Dr. Hunter, Plaintiff again denied any side effects from the use of Lortab.[50]

Simply put, there is no evidence in the medical record that Plaintiff ever complained about any side effects from his medications and thus there was no need for the ALJ to discuss whether there were functional limitation from the side effects of medication.

Accordingly, Plaintiff's suggestion that it was improper to rely upon the Grids because the side effects of medications needed to be taken into account is without merit.

**C.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain**.

Plaintiff argues that the ALJ improperly applied the law in the Eleventh Circuit in finding Plaintiff's complaints of pain not credible. The Commissioner argues that "the

---

[49] R. 158.

[50] R. 153.

ALJ's evaluation of Plaintiff's subjective complaints properly complied with the regulations regarding the evaluation of pain and other symptoms."[51]  The Court agrees that the ALJ properly evaluated Plaintiff's pain in accordance with the Eleventh Circuit pain standard.

The law concerning the analysis of subjective complaints of pain is well settled. In evaluating disability, the ALJ must consider all of a claimant's impairments, including subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[52]  The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[53]  The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[54]  "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[55]  However, a claimant's subjective complaints of

---

[51] Doc. 9.

[52] 20 C.F.R. § 404.1528.

[53] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[54] Id.

[55] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

pain do not conclusively establish a disability unless accompanied by medical evidence.[56]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[57]  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[58]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[59] assessment to Plaintiff's subjective complaints by noting that during the relevant time period Plaintiff presented objective medical evidence that established that degenerative disc disease of the lumbrosacral spine, obesity, lower extremity edema and a pain disorder were medical impairments.[60] Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding his level of pain and inability to work were not wholly credible, stating that "the claimant's activities of daily living and

---

[56] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[57] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[58] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[59] Marbury, 957 F.2d at 839.

[60] R. 20.

conservative treatment history and regimen do not support the severity of his allegations regarding functional limitations."[61]

In making this finding, the ALJ conducted a thorough examination of Plaintiff's medial history, including Plaintiff's complaints of pain. The ALJ noted and properly recognized that Plaintiff complained of "increased back pain that radiates down through his arms with numbing and tingling," in December 2000;[62] that he "continued to report neck and back pain radiating to his arms" in January 2001;[63] and that Plaintiff "reported continued back pain with improvements in his neck pain" in December 2002.[64]

Consistent with the pain standard, the ALJ articulated his reasons for discounting Plaintiff's complaints of pain. The ALJ expressly relied upon the fact that Plaintiff's "treatment history was conservative in nature." The ALJ further noted that "claimant was not a surgical candidate and his future course of treatment was determined to be palliative in nature, with pain management and medications..."[65] The ALJ also noted that in 2003, Dr. Hunter recommended increased exercise and weight loss and that there was no change in recommended activity status through the present date.[66] Lastly, the ALJ properly took into account that the Plaintiff's activities of daily living were not

---

[61] R. 17.

[62] R. 15.

[63] R. 16.

[64] Id.

[65] Id.

[66] Id.

consistent with the severity of Plaintiff's allegations regarding functional limitations.[67] While the Plaintiff's activities of daily living are not conclusive evidence that Plaintiff was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform sedentary work.

Accordingly, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing whether the Plaintiff's subjective complaints were credible. The ALJ articulated specific reasons for rejecting Plaintiff's testimony that he had a limited ability to function, and the reasons articulated by the ALJ were based upon the medical evidence and other substantial evidence of record. Where, as here, an ALJ has made a clearly articulated credibility finding based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

## V.  **CONCLUSION**

In light of the reasons discussed above, the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter final judgment and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 6, 2007.

**GARY R. JONES**
United States Magistrate Judge

Copies to:
All Counsel

---

[67] R. 17.

27